E-FILED
Friday, 10 September, 2021  12:40:21 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cr-30021** |
| | ) | |
| **CHARLES HAYS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Charles Hays' Motion to Suppress (d/e 33).  Hays seeks to exclude all evidence resulting from a traffic stop conducted on October 15, 2019.  Hays argues that evidence seized from a search of his entire vehicle must be suppressed because the initial traffic stop was unlawful, the stop was unreasonably prolonged, and the subsequent warrantless search of the vehicle was unlawful.  For the reasons below, the Court DENIES Hays' motion.

## I.    BACKGROUND[1]

On October 15, 2019, law enforcement with the Central Illinois Enforcement Group had been conducting a drug investigation in Christian County, Illinois.  Agents had received information regarding a male subject from Centralia, Illinois, named "Chuck" that had been supplying methamphetamine in the Christian County, Illinois area.  Agents were conducting surveillance on a suspected drug target location, when they observed a Silver Cadillac arrive at the location with Illinois registration BK92409.  A male suspect exited the vehicle.  After determining that the vehicle was registered to Brenda Berger, agents checked Brenda Berger's Facebook page and were able to determine that the male suspect was Charles ("Chuck") Hays, Brenda Berger's son.

At approximately 6:02 p.m. on October 15, 2021, Inspector Jeff Brown contacted Illinois State Police (ISP) Inspector Evert Nation and told him that the same Cadillac was just seen at a suspected drug target location in Pana, Illinois.  Inspector Brown

---

[1] The Court relies on the law enforcement reports filed in docket entry 37, as well as the parties' briefs for the relevant facts.  The majority of the facts taken from these reports appears undisputed, but the Court notes where Hays may contest the underlying facts.

and Inspector Nation went to conduct surveillance at that location.
At approximately 6:15 p.m., while Inspector Nation was on his way
to Pana, Illinois, he observed a Silver Cadillac and identified it as
the target vehicle.  In his report, Inspector Nation states that he
noted that the vehicle did not have any working tail lights at that
time.  However, Hays' Motion, he notes that the video evidence does
not show that his tail lights were off.  The parties agree that the
vehicle's headlights and tail lights were turned on by the time of the
traffic stop described below.

Inspector Nation contacted Taylorville Police Chief Dwayne
Wheeler and told him about the vehicle and the equipment violation
he had observed (no tail lights).  Inspector Nation advised Chief
Wheeler that he should pull the vehicle over for any traffic
violations.  Inspector Nation also either told K9 Officer Alwerdt to be
on standby or advised Chief Wheeler that K9 Officer Alwerdt was on
standby.

Shortly thereafter, Chief Wheeler got behind the Silver Cadillac
as it drove down the road.  Chief Wheeler's report states that he
noticed that the vehicle had illegal tints on the side-windows and
that he saw the Silver Cadillac cross the center line twice.  Again, as

noted by Hays, this alleged traffic violation did not occur while the dash camera was recording.  Chief Wheeler notified Inspector Nation of the traffic violations and told Inspector Nation that he would stop the vehicle.  Chief Wheeler activated his lights, which also activated Chief Wheeler's dash camera.  Chief Wheeler pulled over the Silver Cadillac in a Family Video store parking lot.  Officer Alwerdt pulled into the parking lot as well.

Chief Wheeler approached the driver's side, and Officer Alwerdt approached the passenger side.  The driver was identified as Hays.  Chief Wheeler advised Hays about the tints on his vehicle and asked for his driver's license and insurance.  Chief Wheeler ran Hays' driver's license and found that the license was valid and clear.

Meanwhile, Officer Alwerdt identified the female passenger as Tamera Wisnasky.  Officer Alwerdt knew Ms. Wisnasky from previous law enforcement contact and knew that there was an outstanding warrant for her arrest.  When Officer Alwerdt asked Ms. Wisnasky for her name, she provided the false name of "Kayla." Officer Alwerdt asked her to get out the vehicle and noticed her right hand was attempting to conceal something.  He asked Ms.

Wisnasky to show him her hands, but she refused.  Officer Alwerdt

then grabbed Mr. Wisnasky's right hand and found a blue glass

pipe used to smoke methamphetamine.  When Officer Alwerdt went

to grab Ms. Wisnasky's left hand, she shoved something in her

mouth.  Officer Alwerdt then grabbed her jaw and told her to spit it

out.  She then spit out a greenish-clear plastic case.  Inside the

case was a crystal like substance suspected to be

methamphetamine.  The substance field-tested positive for

methamphetamine, with a weight of approximately 2.9 grams.  Ms.

Wisnasky was put in handcuffs and placed in the back of a squad

car.

Chief Wheeler asked Hays to get out of the vehicle, and he was

placed in handcuffs.  The report indicates that he was not under

arrest, but just detained "due to the circumstances."  Hays' Motion

states that Chief Wheeler said "I'm just detaining you because of

what's going on right now, ok?"  Motion at 2 (d/e 33).  Chief

Wheeler asked Hays to tell him the female passenger's name.  Hays

also gave the false name "Kayla" for Ms. Wisnasky and stated that

he was just dropping her off.  Chief Wheeler then asked if Hays had

ever been arrested, to which Hays stated he had been arrested for possession and he went to prison.

Law enforcement then proceeded to search the vehicle.  One officer found a screw driver in the center console of the passenger compartment.  An officer asked Hays whether anything was in the car.  Hays answered no and also stated repeatedly that it was not his car.  Law enforcement found no contraband inside the passenger compartment of the vehicle, but, after opening the hood of the vehicle, found a zip-lock bag inside the air filter that contained a white crystal-like substance suspected to be methamphetamine.  The substance tested positive for methamphetamine, weighing approximately 62.3 grams.

Hays' Motion also highlights additional dialogue during the search that was captured by the dash-camera footage but was not in the reports.  During the search of the passenger compartment, Officer Alwerdt states that, if they do not find anything on the first search, then they will impound it.  Chief Wheeler asks Officer Alwerdt "Do you want to have your dog go around?"  Officer Alwerdt says "No, we already found it," presumably referring to the methamphetamine found on Ms. Wisnasky.  Overall, from the start

of the traffic stop until the methamphetamine was found in the air filter, approximately 40 minutes passed.

After the stop was complete, Hays was released pending further investigation.  On March 4, 2020, a federal grand jury charged Defendant with, on or about October 15, 2019, knowingly and intentionally possessing 50 grams or more of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. § 841(b)(1)(A)(viii) (Count One); on or about November 27, 2019, knowingly and intentionally possessing 5 grams or more of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. § 841(b)(1)(B)(viii) (Count Two); and on or about November 27, 2019, knowingly and intentionally possessing a firearm in furtherance of the drug trafficking crime charged in Count Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three).  Indictment (d/e 7).

On August 17, 2021, Hays filed this Motion to Suppress (d/e 33), in which Hays seeks to suppress the drugs at issue in Count One of the Indictment.  The Government filed its response in opposition on August 19, 2021.

## II. ANALYSIS

Hays argues that the evidence from the October 15, 2019 traffic stop should be suppressed because it was the result of an illegal traffic stop, the warrantless search of the vehicle was unlawful, and the stop was unreasonably prolonged.  However, the Court finds that the initial traffic stop was lawful, and, even if it was not lawful, Ms. Wisnasky's outstanding arrest warrant qualified as intervening circumstances.  Further, the Court finds that the later warrantless search of the vehicle was justified under the automobile exception.  Hays' remaining arguments are irrelevant to the evidence recovered in the search.

### A. The Initial Traffic Stop was Lawful and, Even if it Had Been Unlawful, Intervening Circumstances Justified the Stop and Subsequent Search.

A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and, therefore, must be conducted in accordance with the Fourth Amendment.  Heien v. North Carolina, 574 U.S. 54, 60, 135 S. Ct. 530, 536 (2014) (citing Brendlin v. California, 551 U.S. 249, 255–259, 127 S.Ct. 2400 (2007)).  An officer only needs "reasonable suspicion" that the person being

stopped has broken the law.  Id.  A traffic stop is also lawful if the
officer has probable cause to believe a traffic violation occurred.
Whren v. United States, 517 U.S. 806, 809–10, 116 S.Ct. 1769
(1996) (affirming trial court's finding of probable cause for traffic
stop, regardless of officer's subjective motivation, where defendant's
truck was stopped at stop sign for an unusually long time before
turning suddenly without signal and driving off at an unreasonable
speed).  "Probable cause exists when 'the circumstances confronting
a police officer support the reasonable belief that a driver has
committed even a minor traffic offense.'"  United States v. Simon,
937 F.3d 820, 828–29 (7th Cir. 2019), cert. denied, 140 S. Ct. 824
(2020) (quoting United States v. Cashman, 216 F.3d 582, 586 (7th
Cir. 2000)).  The officer's subjective motivation for making the stop
is irrelevant to the Fourth Amendment analysis.  Simon, 937 F.3d
at 829; see also Whren, 517 U.S. at 813.

Here, Chief Wheeler's report indicates that he conducted a
lawful traffic stop based on his reasonable suspicion and/or
probable cause to believe that Hays had committed the traffic
violations of operating a vehicle without the required use of
headlights and tail lights, see 625 ILCS 5/12-201(b) (requiring use

of headlights and tail lights "during the period from sunset to sunrise, . . . and at any other times when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1000 feet.")[2]; improper lane usage, see 625 ILCS 5/11-709(a) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."); and illegally-tinted side windows, see 625 ILCS 5/12-503(a-5) (prohibiting window tinting on windows immediately adjacent to the driver with certain exceptions).

Hays argues that the dash camera footage shows that one can see through the back window of Hays' vehicle.  Accordingly, Hays does not believe it was likely that the windows were illegally tinted. The report, however, only mentions the side-windows as being potentially illegally tinted, so this point is irrelevant.  Hays' Motion also argues that the dash camera footage does not show any traffic violations.  However, the report indicates that the dash camera was

---

[2] Sunset on October 15, 2019 occurred at 6:21:15 p.m.  See Gov't Resp. at 4 (d/e 36) (citing https://sunrisesunset.org/us/springfield-il/2019/10).

turned on after the violations were observed.  Assuming the officer's accounts of the observed traffic violations are credible—which Hays does not clearly challenge in his motion—there was probable cause to pull Hays over for committing the traffic violations.

Even if the initial traffic stop was unlawful, the "evidence seized as a result of [an] unlawful traffic stop may be introduced into evidence at trial if intervening circumstances establish that the evidence came about without 'exploitation of that illegality [and] instead by means sufficiently distinguishable to be purged of the primary taint.'" United States v. Johnson, 383 F.3d 538, 544 (7th Cir. 2004) (quoting United States v. Green, 111 F.3d 515, 520 (7th Cir. 1997)).  Courts are required to examine "three factors when determining whether sufficient attenuation exists to dissipate the initial taint of unlawful police conduct: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." Johnson, 383 F.3d at 544 (citations omitted).

Here, during the traffic stop, Officer Alwerdt recognized the passenger, Ms. Wisnasky, as someone with an outstanding criminal warrant.  The Seventh Circuit has found that "in the unusual case

where the police, after a questionable stop, discover an occupant is wanted on an arrest warrant" the intervening circumstances exception may apply.  <u>Green</u>, 111 F.3d at 523.  In <u>Green</u>, the police stopped a vehicle after it had come from a residence of an individual wanted on a federal warrant.  <u>Id.</u> at 517.  Officers believed that the occupants of the vehicle might have knowledge of the whereabouts of the wanted individual, but the Seventh Circuit found that this did not amount to reasonable suspicion to stop the vehicle.  <u>Id.</u> However, during the course of the stop, the officers discovered that the passenger of the vehicle had an outstanding warrant.  <u>Id.</u>  After arresting the passenger, the vehicle was searched incident to arrest and crack cocaine was found in two separate bags in the passenger compartment of the vehicle.  <u>Id.</u>  Despite the lack of reasonable suspicion to stop the vehicle, the Seventh Circuit found the subsequent search lawful due to the discovery of the outstanding arrest warrant of the passenger: "It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of 'Olly, Olly, Oxen Free.'  Because the arrest is lawful, a search incident to the arrest is also lawful."

Id. at 521; see also Johnson, 383 F.3d at 544 (agreeing with defendant's concession that once law enforcement identified defendant as a person known to the officer to have an outstanding arrest warrant, the officer had probable cause to arrest him independent of the circumstances of the initial stop).  Like Green, the subsequent identification of Ms. Wisnasky as someone with an outstanding arrest warrant justified the stop and the search.

## B. The Warrantless Search of the Entire Vehicle Was Authorized Under the Automobile Exception.

"Although warrantless searches are generally *per se* unreasonable, they are subject to 'a few specifically established and well-delineated exceptions.'"  United States v. Reedy, 989 F.3d 548, 555 (7th Cir. 2021) (citing Arizona v. Gant, 556 U.S. 332, 338, 129 S. Ct. 1710 (2009)).  One exception to warrantless searches applies when an occupant of the vehicle is arrested: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  Gant, 556 U.S. 332 at 351.  Additionally, under the "automobile exception," "[t]he police do not

need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity." <u>Edwards</u>, 769 F.3d at 514 (internal citations omitted).  Probable cause is a low standard and exists when, "based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." <u>United States v. Richards</u>, 719 F.3d 746, 754–55 (7th Cir. 2013) (citation omitted).  A "fair probability of discovering contraband" is enough. <u>Id.</u> at 755.

Here, the area under the hood of the vehicle was certainly beyond Ms. Wisnasky's reach.  However, Ms. Wisnasky was arrested for possessing drugs and it was reasonable to believe the vehicle contained evidence of the offense of arrest.  Moreover, the Court finds that the search was justified under the automobile exception because law enforcement had probable cause to believe the vehicle contained evidence of criminal activity.  Ms. Wisnasky, a passenger in Hays' vehicle, was arrested and found to be in possession of 2.9 grams of methamphetamine and a blue glass pipe used to smoke methamphetamine.  Possession of these items— along with knowledge that the car had just been at a suspected

drug target location, that Ms. Wisnasky was wanted on an outstanding warrant for drug possession, that Ms. Wisnasky had given a fake name, and that Hays had a criminal conviction for drug possession—gave officers probable cause to believe that a drug crime had been or was being committed and that evidence of the criminal activity would be in the vehicle.

Moreover, law enforcement was authorized to search the <u>entire</u> car for evidence of the crime because there was probable cause to believe that evidence of the drug crime could be found anywhere in the car.  <u>See</u>, <u>e.g.</u>, <u>United States v. Johnson</u>, 383 F.3d 538, 545–46 (7th Cir. 2004) (law enforcement officer's "discovery of a banned substance (drugs) on Johnson's person clearly provided him with probable cause to search the trunk of the vehicle, including any containers (<i>i.e.,</i> the briefcase) therein, since the officer had a reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside."); <u>United States v. Ross</u>, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173 (1982) ("We hold that the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant.  If probable

cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").  The Court also notes that Officer Wheeler's report states that a screw driver was found during the search of the passenger compartment.  Alone, the presence of the screw driver would not have provided any probable cause for a search.  But, combined with the evidence of criminal activity that the officers already had, the presence of a screw driver in the passenger compartment further bolstered law enforcement's probable cause to search under the hood of the vehicle.  This is because it gave them further reason to believe that evidence of a drug crime may be hidden not just within the passenger compartment, but also under the hood of the car in a place only accessible by using a screw driver.  Finally, Hays does not dispute that once officers discovered additional methamphetamine under the hood of the vehicle, they had probable cause to arrest Hays, the driver.  <u>See</u>, <u>e.g.</u>, <u>Maryland v. Pringle</u>, 540 U.S. 366, 373 (2003).

Hays' motion argues he was *de facto* arrested during the search of the car and that the search cannot be justified as a search incident to his *de facto* arrest because the officers did not have

reason to believe that the vehicle contained evidence of his alleged traffic violations. While it may be true that searching the car for evidence of the traffic violations would not have been lawful, this argument is also irrelevant in light of the probable cause to search the car for evidence of criminal activity relating to drug crimes. Similarly, Hays' argument that the traffic stop was unreasonably prolonged ignores the intervening events—including the outstanding arrest warrant for Ms. Wisnasky and the discovery of drugs in his passenger's possession—that justified extending the stop and conducting the search. See also, United States v. Walden, 146 F.3d 487, 490 (7th Cir. 1998) (holding that officers were justified in prolonging the traffic stop to investigate illegal activity other than that activity for which the car was stopped when they had "reasonable suspicion that the occupants of [the] vehicle [were] engaged in other illegal activity"). And, even if law enforcement was not justified in detaining Hays during the search of the car, nothing was found on Hays' person or as a result of his detention prior to his later lawful arrest upon finding the methamphetamine in the air filter of his vehicle. Accordingly, the Court finds that the warrantless search of the car was permissible under the automobile

exception.  Therefore, the evidence obtained as a result of the search is admissible.

### C. Hays' Request for an Evidentiary Hearing is Denied.

"A defendant who requests a suppression hearing must present definite, specific, detailed, and nonconjectural facts . . . demonstrating that there is a disputed material issue of fact." United States v. Clark, 935 F.3d 558, 568 (7th Cir. 2019) (internal citations omitted).  "Reliance on vague, conclusory allegations is insufficient."  Id.  The facts in this matter are largely uncontested.  Hays only raises vague allegations regarding whether the initial traffic stop was justified.  Further, as explained above, the search of the vehicle was lawful due to intervening circumstances even if Hays had not committed any traffic violations.  Accordingly, the Court finds that no material disputed issues of fact exist and the request for an evidentiary hearing is denied.

### III. CONCLUSION

For the reasons above, Defendant Charles Hays' Motion to Suppress (d/e 33) is DENIED.

**ENTERED: September 8, 2021.**

**FOR THE COURT:**

_s/ Sue E. Myerscough_

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**